J. Brugh Lower
**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4581
jlower@fbtgibbons.com

*Attorneys for Plaintiff*
*Mecca & Son Trucking Co., Inc.*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MECCA & SON TRUCKING CO., INC., | Civil Action No. 26-1237 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| MECCA TRANSPORT, INC. and MUHAMMAD SHAHID, | |
| Defendants. | |

Plaintiff Mecca & Son Trucking Co., Inc. ("Plaintiff"), for its Complaint against Defendants Mecca Transport, Inc. and Muhammad Shahid (collectively, "Defendants"), alleges as follows (on knowledge as to Plaintiff; otherwise on information and belief):

### NATURE OF ACTION

1.       This is a civil action for trademark infringement, trademark dilution, and unfair competition under 15 U.S.C. §§ 1114 and 1125(a) and (c).  In addition, this is an action for trademark infringement, dilution, and unfair competition under the statutes of the state of New Jersey and the common law.

2.       This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a). This Court has supplemental jurisdiction over

Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because the claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.    This Court has personal jurisdiction over Defendants, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

4.    Plaintiff is a New Jersey corporation with its principal place of business at 580 Marin Boulevard, Jersey City, New Jersey 07310.

5.    Defendant Mecca Transport, Inc. is a New Jersey corporation with principal places of business at 123 Pennsylvania Avenue, Kearny, New Jersey 07032 and 401 Commerce Road, Linden, New Jersey 07036.

6.    Defendant Muhammad Shahid is the owner and principal of Mecca Transport, Inc. and is a moving, conscious, and active force behind the infringing acts, and actively participated in and approved the acts of infringement.  Defendant Muhammad Shahid resides in New Jersey.

7.    Each Defendant was the agent, employee, partner, and/or joint venturer of each of the other Defendants, and in committing the acts alleged herein, was acting within the course and scope of that relationship and with permission and consent of the other Defendants, and they have acted in concert with each other in connection with the allegations herein.

## PLAINTIFF'S USE AND OWNERSHIP OF THE MARK

8.    Plaintiff operates a trucking, logistics, port drayage, and warehousing business using the trademark Mecca & Son (U.S. Reg. 6,388,451) (the "Mark"), which was registered on or about June 15, 2021.

9.      Plaintiff first began using the Mark in commerce in 1950 (the "Priority Date") and has continuously utilized the mark since then.

10.     Plaintiff provides trucking, logistics, port drayage, and warehousing, including for Port Newark, Port Elizabeth, Jersey City, Bayonne, Hudson County, Bergen County, Sussex County, Essex County, North Jersey, New York City, Brooklyn, Long Island, Staten Island, Queens, and Manhattan.

11.     The Mark is valid, subsisting, and in full force and effect. Plaintiff has exclusive rights to use the Mark in commerce and/or in connection with all of the services identified in the registration, including the aforementioned business activities.

12.     As the result of Plaintiff's exclusive and continuous use of the Mark, the Mark has acquired substantial good will. The Mark has become extremely well known as identifying and distinguishing Plaintiff as the source of high-quality products and services available under the Mark.  Plaintiff has continuously used the Mark in commerce in New Jersey and the tri-state area, in connection with its trucking services, including in social media and online advertising.

**<u>DEFENDANTS ADMIT INFRINGEMENT AND<br>CONTINUE WILLFUL INFRINGEMENT</u>**

13.     Defendant Mecca Transport, Inc. is a business engaged in trucking using the same channels of trade as Plaintiff and holds itself out as "Mecca Transport," "Mecca Transport and Logistics," "Around the Clock Mecca," or similar (the "Infringing Mark").

14.     Defendants use the Infringing Mark for their business affiliated with trucking services, including near Plaintiff's headquarters.  Defendants operate in the same channels of trade as Plaintiff.

15.     Defendants' continued use of the Infringing Mark has caused actual confusion among third parties.

16.    Plaintiff sent cease and desist letters to Defendants detailing Defendants' infringement of the Mark and demanding that, among other things, Defendants cease all further infringement.

17.    Eventually the parties entered into an agreement wherein Defendants agreed that the Infringing Mark was confusingly similar to the Mark and that Plaintiff had superior rights to that of Defendants. Furthermore, Defendants agreed to cease using the Infringing Mark.

18.    Despite the agreement to do otherwise, Defendants continued in their knowing and willful infringing activities in using the Infringing Mark that it previously agreed to cease.

19.    Plaintiff has repeatedly notified Defendants of Defendants' continued infringement of the Mark.

20.    Defendants have continued to use the Mark, the Infringing Mark and/or other confusingly similar marks on vehicles, on equipment, on chassis, and in other operations of its business.

21.    Further, Plaintiff has been billed and/or fined for mis-delivery and misattribution of shipments. Fines and penalties, attributable solely to Defendants' conduct and business operations were assessed against Plaintiff for business transacted by Defendants, all of which clearly demonstrates confusion in the marketplace.

22.    Defendants' continued, willful infringement of the Mark continues to cause considerable confusion and impermissibly allows Defendants to misappropriate the good will Plaintiff has established. These illicit activities by Defendants create and reinforce a misleading impression that Defendants are affiliated with Plaintiff. All of the foregoing results in direct harm to Plaintiff.

23.    Defendants' continued infringement of Plaintiff's Mark despite multiple notices by Plaintiff to cease and desist constitutes knowing and willful infringement.

24.    Examples of Defendants' use of the Infringing Mark are attached as **Exhibit A**.

### FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement Under 15 U.S.C. § 1114)

25.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

26.    Plaintiff owns a federal registration of the Mark with the USPTO and has the exclusive right to use the mark in connection with its respective class(es).

27.    Plaintiff has spent considerable time, money, and effort advertising and promoting the Mark in commerce as a distinctive source identifier in connection with its goods and/or services.

28.    As a result of such extensive and exclusive use and promotion, the Mark has maintained a well-regarded reputation and recognition in the industry, particularly in the Tri-State area and the Eastern Seaboard. The Mark has developed a distinctive meaning as an indicator that Plaintiff is the source of the goods or services identified by the Mark.

29.    The Mark represents valuable goodwill owned by Plaintiff.

30.    Defendants' use of the Mark is without consent.

31.    Defendants' use of the Mark is to confuse and deceive others into believing that the Defendants are sponsored, affiliated, or associated with Plaintiff when, in fact, they are not.

32.    Defendants' use of the Mark has and will likely continue to cause confusion, mistake, and deception as to the source of the goods and/or services, and Defendants are unfairly benefitting from Plaintiffs' substantial efforts in advertising and promoting the Mark.

33.    Defendants' infringement of the Mark is willful.

34.    Unless restrained, Defendants will continue to infringe on the Mark. Pecuniary compensation alone will not afford adequate relief for the damage to the Mark and Plaintiff's brand. In the absence of injunctive relief, others are likely to continue to be mistaken or deceived as to the true source, origin, sponsorship, and affiliation of Defendants.

35.    Defendants' acts have caused and will continue to cause irreparable harm to Plaintiff unless restrained by this Court.

36.    Plaintiff has no adequate remedy at law.

37.    Accordingly, Plaintiff is entitled to an order enjoining and restraining Defendants and all those acting in concert with Defendants, from utilizing the Mark, the Infringing Mark, or substantially similar copies of either.

38.    Plaintiff seeks judgment pursuant to 15 U.S.C. § 1117 for (a) Defendants' profits made by and through their illicit acts, for the damages sustained by Plaintiff, and for all costs necessary to remediate the illicit acts and their effects, pursuant to 15 U.S.C. §§ 1116 and 1117; or (b) statutory damages.

39.    Defendants willfully intended to trade on the recognition of the Mark, entitling Plaintiff to treble their damages and Defendants' profits, subject to the principles of equity pursuant to the provisions of 15 U.S.C. § 1117.

40.    Defendants' willful conduct renders this case exceptional, entitling Plaintiff to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendants' actions pursuant to 15 U.S.C. § 1117.

41.    Pursuant to 15 U.S.C. § 1118, Plaintiff is entitled to impoundment and destruction of infringing articles.

## SECOND CLAIM FOR RELIEF
**(Federal Unfair Competition, False Designation of Origin,
and False Endorsement Under 15 U.S.C. § 1125(a))**

42.     Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

43.     Defendants' unauthorized and infringing use of the Mark in connection with the Defendants' advertisement, promotion, offers for sale, and sales of its goods and/or services through its website and/or social media websites constitutes use of the Mark in commerce.

44.     Defendants' use of the Mark is to confuse and deceive others into believing that Defendants and their goods and/or services are sponsored or endorsed by, or are affiliated or associated with Plaintiff when, in fact, they are not.

45.     Defendants' unauthorized use of the Mark is likely to cause confusion, mistake, and deception as to the source of the products and/or services and Defendants are unfairly benefitting from Plaintiff's substantial efforts in advertising and promoting the Mark.

46.     Defendants have actual knowledge of Plaintiff's ownership and prior use of the Mark and without the consent of Plaintiff have and continue to willfully and intentionally violate 15 U.S.C. § 1125(a).

47.     This is an exceptional case within the meaning of 15 U.S.C § 1117.

48.     Defendants' actions constitute a false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a), and Defendants' use of the Mark constitutes a false endorsement in violation of 15 U.S.C. § 1125(a).

49.     Defendants' use of the Mark constitutes a violation of 15 U.S.C. § 1125(a), and Plaintiff is entitled to an injunction prohibiting such further use.

50.     Plaintiff seeks judgment for (a) Defendants' profits made by and through their illicit acts, for the damages sustained by Plaintiff, and for all costs necessary to remediate the illicit acts

and their effects, pursuant to 15 U.S.C. §§ 1116 and 1117; or (b) statutory damages.

51.     Defendants willfully intended to trade on the recognition of the Mark, entitling Plaintiff to treble their damages and Defendants' profits, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. § 1117.

52.     Defendants' willful conduct renders this case exceptional, entitling Plaintiff to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendants' actions pursuant to 15 U.S.C. § 1117.

53.     Pursuant to 15 U.S.C. § 1118, Plaintiff is entitled to impoundment and destruction of infringing articles.

### THIRD CLAIM FOR RELIEF
**(Federal Trademark Dilution under 15 U.S.C. § 1125(c))**

54.     Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

55.     The Mark is a distinctive and famous mark within the meaning of 15 U.S.C. § 1125(c) by virtue of its inherent and acquired distinctiveness; the long duration and extent of the Mark's use; the long duration, and geographic reach of advertising and publicity of the Mark; the large volume of sales of goods and/or services offered under the Mark; and the high degree of actual recognition of the Mark.

56.     Defendants' use of the Mark and derivatives thereof is likely to cause confusion and is being used by Defendants for their own commercial gain.

57.     Even if the Court finds Defendants' use of the infringing marks is not likely to cause confusion with the Mark, Defendants have engaged in dilution by blurring because Defendants' use of the Mark and derivatives thereof impairs the fame and distinctiveness of the Mark.

58.     Defendants have also engaged in dilution by tarnishment because Defendants' use of the Mark and derivatives thereof harms the reputation and goodwill associated with the Mark.

59.     Defendants adopted use of the Mark well after the Mark became famous.

60.     The Infringing Mark and derivatives thereof used by Defendants are substantively identical to the Mark, as was admitted by Defendants previously.

61.     Defendants use the Mark in commerce, particularly in transporting goods across state lines. Such use is commercial in nature.

62.     Defendants use of the Mark in connection with an online presence and associated services has caused, or is likely to cause, dilution of the Mark. It is likely that the ordinary consuming public has made and will continue to make an association arising from the similarity of the marks that impairs the distinctiveness of the Mark. As such confusion has already been sown among vendors in billing, confusion among the general public is all the more probable.

63.     Defendants use of the Mark constitutes dilution under 15 U.S.C. § 1125(c), and Plaintiff is entitled to an injunction prohibiting such further use.

64.     Plaintiff seeks judgment for (a) Defendants' profits made by and through their illicit acts, for the damages sustained by Plaintiff, and for all costs necessary to remediate the illicit acts and their effects, pursuant to 15 U.S.C. §§ 1116 and 1117; or (b) statutory damages.

65.     Defendants willfully intended to trade on the recognition of Plaintiff's famous marks, entitling Plaintiff to treble their damages and Defendants' profits, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. § 1117.

66.     Defendants' willful conduct renders this case exceptional, entitling Plaintiff to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendants' actions pursuant to 15 U.S.C. § 1117.

67.     Pursuant to 15 U.S.C. § 1118, Plaintiff is entitled to impoundment and destruction of infringing articles.

## FOURTH CLAIM FOR RELIEF
### (New Jersey Statutory and/or Common Law Infringement)

68.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

69.    Plaintiff and its predecessors in interest first adopted and used the Mark as a means of establishing goodwill and reputation and to describe, identify or denominate particular goods and services rendered or offered by it and to distinguish them from similar goods and services rendered or offered by others.

70.    The Mark is valid and protectable by virtue of its association with such goods and services and Plaintiff's federal registration.

71.    Defendants have commenced the use of an identical or confusingly similar mark to indicate or identify closely related services.

72.    As a result, Defendants' use of the Mark is likely to cause consumer confusion as to the source or as to the sponsorship of the services or goods offered or to be offered.

73.    Defendants' use of the Mark is without the consent of Plaintiff.

74.    Defendants have acted with the knowledge of the Mark, and with the intent to cause confusion and/or trade on Plaintiff's reputation and goodwill.

75.    The use by Defendants of the Mark and marks incorporating the Mark to identify their goods and services, as described above, constitutes infringement of Plaintiff's rights in the Mark pursuant to the statutory and/or common law of the State of New Jersey, for which infringement Plaintiff is entitled to all remedies available to them under common law of the State of New Jersey, including damages to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (New Jersey Statutory and/or Common Law Dilution)

76.    Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

77.     Plaintiff and its predecessors in interest first adopted and used the Mark as a means of establishing goodwill and reputation and to describe, identify or denominate particular goods and services rendered or offered by it and to distinguish them from similar goods and services rendered or offered by others.

78.     The Mark is valid and protectable by virtue of its association with such goods and services and Plaintiff's federal registration.

79.     Defendants have commenced the use of an identical or confusingly similar mark to indicate or identify closely related services.

80.     As a result, Defendants' use of the Mark is likely to cause consumer confusion as to the source or as to the sponsorship of the services or goods offered or to be offered.

81.     Defendants' use of the Mark is without the consent of Plaintiff.

82.     Defendants have acted with the knowledge of the Mark, and with the intent to cause confusion and/or trade on Plaintiff's reputation and goodwill.

83.     The use by Defendants of the Mark and marks incorporating the Mark to identify its goods and services, as described above, constitutes infringement of Plaintiff's rights in the marks pursuant to the statutory and/or common law of the State of New Jersey, for which infringement Plaintiff is entitled to all remedies available to them under the common law of the State of New Jersey, including damages to be proven at trial.

84.     The Mark is a distinctive and famous mark in the State of New Jersey within the meaning of New Jersey statutes and common law by virtue of the high degree of inherent and acquired distinctiveness of the Mark; the long duration and wide extent of use of the Mark in connection with the goods and services with which the Mark is used; the long duration and wide extent of advertising and publicity of the Mark; the wide geographic extent of the trading in

which the Mark is used; the high degree of recognition of the Mark in Plaintiff's and the Defendants' channels of trade; and the federal registration of the Mark.

85.    The Mark has been used extensively throughout this State and this District since approximately 1950.

86.    Defendants' use of the Mark and derivatives thereof has caused and is likely to continue to cause confusion and is being used by Defendants for their own commercial gain.

87.    Even if the Court finds Defendants' use of the Mark is not likely to cause confusion with the Mark, Defendants have engaged in dilution by blurring because the Defendants' use of the Mark and derivatives thereof impairs the fame and distinctiveness of the Mark.

88.    Defendants have engaged in dilution by tarnishment because Defendants' use of the Mark and derivatives thereof harms the reputation and goodwill associated with the Mark.

89.    Defendants adopted the Mark well after the Mark became famous.

90.    Defendants' use of the Mark as illustrated herein is substantively identical to the Mark and Defendants have admitted the same.

91.    Defendants use the Mark in commerce. Such use is commercial in nature.

92.    Defendants' use of the Mark in connection with their goods and services has caused and is likely to continue to cause dilution of the Mark. It is likely that the ordinary consuming public in New Jersey and the Tri-state area have made and will continue to make an association arising from use of the Mark that impairs the distinctiveness of the Mark.

93.    Defendants willfully intended to trade on the recognition of the famous Mark.

94.    Defendants' acts have caused Plaintiff damages, and Plaintiff is entitled to injunctive relief and all other available remedies under New Jersey statutory and common law, including without limitation: Defendants' profits made by Defendants through their unlawful acts;

damages sustained by Plaintiff; all costs necessary to remediate the unlawful acts and their effects; and the costs, expenses, and attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

95.     Plaintiff further seeks judgment for three times the amount of Defendants' profits or Plaintiff's damages, whichever is greater, due to the nature of Defendants' conduct.

96.     Plaintiff is further entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

97.     Plaintiff is entitled to impoundment and destruction of infringing articles.

<u>SIXTH CLAIM FOR RELIEF</u>
**(New Jersey Statutory and/or Common Law Unfair Competition)**

98.     Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

99.     As alleged herein, Defendants have engaged in deceptive or fraudulent conduct, which is likely to cause, if it has not already caused, customer confusion in violation of New Jersey statutory and/or common law.

100.    Defendants' actions, as described above, constitute unfair competition under the statutory and/or common law of the State of New Jersey, in that Defendants' actions constitute federal trademark infringement under the Lanham Act, false association, false designation of origin, and unfair Competition and passing off under the Lanham Act, dilution under the Lanham Act, dilution under New Jersey statutory and/or common law, and New Jersey statutory and/or common law trademark infringement, entitling Plaintiff to all remedies available under New Jersey law for such unfair competition.

101.    Defendants' actions are likely to cause consumers to believe that Defendants' services originate from the same source as, or are sponsored or approved by Plaintiff, or that there is an association, affiliation, or connection between Defendants and Plaintiff.

13

102. Through Defendants' unauthorized use of the Mark in connection with Defendants' goods and services in commerce, Defendants have committed trademark infringement, passing off, palming off, imitating, and/or unfair or deceptive practices and are causing or are likely to cause confusion and/or deception.

103. Defendants have used, in connection with their goods and services, a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services by Plaintiff.

104. Defendants unfairly compete with Plaintiff because their acts as alleged herein were committed with the intent to deceive and defraud the public in order to gain an increase in their sales, customer base, and share in the online merchandise industry.

105. Defendants are liable to Plaintiff for unfair competition under New Jersey law, because Defendants' conduct is tortious and has deprived Plaintiff of customers and other prospects.

106. Defendants' acts as alleged herein constitute unfair, deceptive, or misleading acts in violation of New Jersey law. Defendants' acts of unfair competition have caused Plaintiff damages, and Plaintiff seeks judgment for Defendants' profits made by Defendants' unfair competition, for the damages sustained by Plaintiff, for all costs necessary to remediate the unfair competition and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy Defendants' actions.

107. Plaintiff further seeks judgment for punitive damages of at least three times the amount of Defendants' profits or Plaintiff's damages, whichever is greater, due to the nature of

Defendants' conduct.

108.    Further, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendants to stop the illicit conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.    An injunction preliminarily and permanently enjoining Defendants and their employees, agents, partners, officers, directors, owners, shareholders, principals, parents, subsidiaries, related companies, affiliates, licensees, successors, and assigns, and all persons in active concert or participation with any of them, from using the Mark in any manner, any other marks and names containing MECCA, and any other marks and names that are confusingly similar to the Mark (collectively, the "Infringing Marks") in any manner, including for advertising, marketing, and related services; promotion and sale on any websites of any services using the Infringing Marks; distribution, display, and printing of materials bearing the Infringing Marks; displaying or otherwise using the Mark on any sign, building, vehicle, equipment, chassis, or other item; using or registering the Infringing Marks as or as part of any domain names, URLs, social media account or page names, email addresses, screen names, trademarks, business names, hashtags, or any other names or identifiers;

B.    An Order directing Defendants to remove the Infringing Marks from all promotional materials, advertising, websites, signs, buildings, vehicles, equipment, chassis, or other items owned, operated, or controlled by Defendants;

C.    An Order directing Defendants to withdraw and retract from the marketplace in the United States all materials that bear or display the Infringing Marks, including promotional

materials and advertisements;

D.    An Order directing Defendants to cease and remove all uses of any of the Infringing Marks from any business names, corporate names, trade names, and the like, and file the appropriate amendment documents with the local or state authorities;

E.    An Order requiring Defendants to pay Plaintiff the cost for corrective advertising and/or engage in corrective advertising in a manner directed by the Court.

F.    An Order directing Defendants to file with this Court and serve on Plaintiff's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the injunction;

G.    An Order requiring Defendants to account for and to pay any and all profits arising from the foregoing acts of infringement, false designation of origin, unfair competition, and an increasing of such profits for payment to Plaintiff in accordance with 15 U.S.C. § 1117 and other applicable statutes and laws;

H.    An Order requiring Defendants to pay compensatory damages in an amount as yet undetermined caused by the foregoing acts of infringement, false designation of origin, and unfair competition, and trebling such compensatory damages for payment to Plaintiff in accordance with 15 U.S.C. § 1117 and other applicable statutes and laws;

I.    An Order requiring Defendants to pay Plaintiff's costs and attorney's fees in this action pursuant to 15 U.S.C. § 1117 and other applicable statutes and laws;

J.    An Order requiring Defendants to pay punitive damages in an amount as yet undetermined caused by Defendants' foregoing acts.

K.    Restitutionary relief against Defendants and in favor of Plaintiff, including disgorgement of wrongfully obtained profits and any other appropriate relief;

L.    Other relief as the Court may deem appropriate, including without limitation all remedies provided for under any other applicable laws.


Dated:    February 6, 2026                      s/ J. Brugh Lower
          Newark, New Jersey                    J. Brugh Lower
                                                **FBT GIBBONS LLP**
                                                One Gateway Center
                                                Newark, New Jersey 07102
                                                (973) 596-4581
                                                jlower@fbtgibbons.com

                                                *Attorneys for Plaintiff*
                                                *Mecca & Son Trucking Co., Inc.*

# EXHIBIT A





























